## Case No. 3,551.

### DALY v. MAGUIRE.

[6 Blatchf. 137.] [1]

Circuit Court, S. D. New York.  May Term, 1868.

PRACTICE—WITHDRAWING EXHIBITS—PHOTO-
GRAPHIC SUBSTITUTES.

In this case, the court ordered the originals of printed exhibits, on file as parts of a deposition, to be taken from the files for the purpose of being annexed to a commission, on condition that photographic fac-similes thereof should first be made and placed on file, in lieu of the originals, under the direction of the clerk.

This was an action [by Augustin Daly against Thomas Maguire] for the infringement of the copyright of a play. The deposition of the defendant had been taken and filed. Annexed to it, as exhibits, were the printed programme of a performance at a theatre in San Francisco, and certain slips cut from newspapers published at that place. The plaintiff now applied for leave to take these exhibits from the files, and annex them to a commission which was about to be issued in the cause, for the examination of witnesses at San Francisco.

BLATCHFORD, District Judge. The application is granted on condition that the plaintiff shall, under the direction of the clerk, first cause to be made and placed on file, in lieu of the original exhibits, photographic fac-similes thereof.

## Case No. 3,552.

### DALY v. PALMER et al.

[6 Blatchf. 256; [1] 8 Am. Law Reg. (N. S.) 286; 36 How. Pr. 206; 3 Am. Law Rev. 453.]

Circuit Court, S. D. New York.  Dec. Term, 1868.

COPYRIGHT—"DRAMATIC COMPOSITIONS" DEFINED
—PANTOMIME—INFRINGEMENT—SALE OF INFRIN-
GING PLAY.

1. What is meant by the provision in the copyright act of August 18, 1856 (11 Stat. 138), which confers on the author or proprietor of a copyrighted dramatic composition, designed or suited for public representation, along with the sole right to print and publish it, the sole right to act, perform or represent it on a stage or public place, defined.

2. A written play, consisting of directions for its representation by action, without the use of spoken language by the characters, is a dramatic composition, within that act.
[Cited in Carte v. Duff, 25 Fed. 187.]

3. The question of infringement of a copyrighted dramatic composition, considered.

4. The case of D'Almaine v. Boosey, 1 Younge & C. 288, cited and applied.

5. Under the act of 1856, the author of a copyrighted dramatic composition is entitled to be protected against piracy, in whole or in part, by representation.
[Cited in Henderson v. Tompkins, 60 Fed. 764.]

6. Where all that was substantial and material in a scene of a copyrighted play, a great part of such scene being represented by actions and not by spoken language, was used in the same order and sequence of events, and in a manner to convey the same sensations and impressions to those who saw it represented, held, that there was an infringement.
[Cited in Serrana v. Jefferson, 33 Fed. 848; Fuller v. Bemis, 50 Fed. 928. Followed in Daly v. Webster, 4 C. C. A. 10, 56 Fed. 483.]

7. The true test of piracy, in respect to a copyright, defined.

8. The sale of an infringing play to another, with a view to its public representation, makes the seller a participant in causing the play to be publicly represented.

In equity. This was an application [by Augustin Daly] for a provisional injunction to restrain the defendants [Henry D. Palmer and Henry C. Jarrett] from the public performance and representation, and from the sale for dramatic representation, of a scene called the "Railroad Scene," in a play called "After Dark."

Thomas S. Alexander, William Tracy, and Joseph F. Daly, for plaintiff.
William D. Booth and Thomas W. Clarke, for defendants.

BLATCHFORD, District Judge. The plaintiff is, by profession, a dramatic author, his business being to compose, write, and produce on the theatrical stage, dramatic compositions, commonly called plays. The defendants are the managers of a public place of theatrical amusement in the city of New York, called "Niblo's Garden." Before the 1st of August, 1867, the plaintiff composed and wrote a dramatic composition called "Under the Gaslight," and on that day he took the proper steps to secure to himself a copyright for the composition, under the provisions of the act of February 3, 1831 (4 Stat. 436), by depositing before publication, a printed copy of the title of the composition, as author and proprietor, in the clerk's office of the district court of the southern district of New York, where he resided at the time.[2] The composition was afterwards printed and published, and, within three months from its publication, he caused a copy of it, as printed and published, to be delivered to said clerk.[3]

[2] NOTE [from original report in 3 Am. Law Rev. 456]. The record of title may be made after representation as well as before. Roberts v. Myers [Case No. 11,906], case of the "Octoroon." But it must be made before publication, otherwise the protection of the statute is lost. Bartlett v. Crittenden [Id. 1,076], "System of Bookkeeping." See, also, Jollie v. Jaques [Id. 7,437], case of the "Serious Family Polka;" Baker v. Taylor [Id. 782], case of the "Sacred Mountains;" Wheaton v. Peters, 8 Pet. [33 U. S.] 591, case of "Peters' Condensed Reports;" Dwight v. Appleton [Case No. 4,215], case of "Dwight's Theology;" Ewer v. Coxe [Id. 4,584], case of the "American Dispensatory."

[3] NOTE [from original report in 3 Am. Law Rev. 456]. This delivery of the copy of the published book is a necessary prerequisite to claiming protection of the statute against unauthorized publication, except under § 9, act of 1831 [4

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permision.]